## NATIONAL LABOR RELATIONS BOARD, Petitioner,

### v.

## IDEAL MACARONI COMPANY, Respondent.

### No. 92–5365.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1992.

Decided April 1, 1993.

Aileen A. Armstrong, Deputy Associate Gen. Counsel, Peter Winkler (briefed), Joseph Oertel, Nancy J. Gottfried (argued), N.L.R.B., Office of the General Counsel, Washington, DC, Frederick Calatrello, Director, N.L.R.B., Region 8, Cleveland, OH, for petitioner.

Andrew C. Meyer (argued and briefed), Duvin, Cahn & Barnard, Cleveland, OH, for respondent.

Before: MARTIN and MILBURN, Circuit Judges; and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

The National Labor Relations Board (NLRB) petitions for enforcement of its order issued against the Ideal Macaroni Company (Ideal) to recognize and bargain with Teamsters Local 407, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the union). For the following reasons, we DENY the NLRB's petition.

Ideal modernized part of its past-manufacturing operation by purchasing new equipment in 1985. Due to an increase in demand for some of its products and certain problems with its machines, Ideal hired six new employees in October, 1985. By March, 1986, Ideal's manufacturing problems had been alleviated and its need for employees declined. As a result, Ideal notified three employees on March 31 and April 1 that they would be laid off. Ideal told the employees to return their uniforms and clean out their lockers. Ideal paid the employees for one week of vacation, even

though the employees were not yet entitled to that vacation.

According to testimony before the NLRB, one employee, upon being told that she would get paid for vacation, told her supervisor: "[T]hat sure tells me that we aren't coming back." In response, her superior stated that the layoff was supposed to be temporary. In addition, that employee and another testified before the NLRB that they were told that they would be called back to work in July to help with the annual cleaning of the plant.

On May 21, 1986, the NLRB conducted a representation election among Ideal's employees. Fifteen employees voted for representation by Local 407 and fifteen employees voted against representation. In addition, there were four disputed votes: three by the laid-off employees and one by Hope Pepus. Ideal objected to the votes of the laid off employees and the union objected to the vote of Hope Pepus.[1] A hearing was held before an administrative law judge (ALJ) who determined that Ideal had discriminated against the employees for their union sentiment by laying them off, and that the employees were entitled to vote in the representation election. The NLRB reversed the ALJ as to the discrimination charge because it found that the layoffs were for legitimate business reasons.

The NLRB, however, decided that the employees were entitled to vote in the election because at the time of the election these employees had a reasonable expectation of recall within a reasonable time in the future. The NLRB, accordingly, decided that the union prevailed by a vote of 18 to 16. The NLRB ordered Ideal to recognize and bargain with the union. Following Ideal's refusal to bargain, the union filed an unfair labor practice charge against Ideal for its failure to recognize it as the employee bargaining representative. The NLRB issued a cease and desist order against Ideal and now petitions this court to enforce its order.

In its fifteen page decision, the NLRB only devoted a single paragraph to the "reasonable expectation of reemployment" question:

Alternatively, the judge found that at the time of the election the three employees had a reasonable expectation of reemployment within the foreseeable future, and that their ballots should accordingly be opened and counted. He found that the three employees were not told when they were hired the previous October that they were temporary employees, and that at the time of the layoff they were not specifically told that the layoff was permanent. Rather, they were told "somewhat vaguely" that recall could be in days, weeks, or months. The judge also noted that under the respondent's recall policy the three employees had an apparent right to recall equivalent to the time already worked for the company, in this case approximately 5 months. The election was conducted approximately 2 months after the layoff. On these facts, and in agreement with the judge's alternative finding, we find that the three employees had a reasonable expectancy of recall.

The decision was not unanimous on this subordinate issue. Footnote 15 of the NLRB decision reveals that "Member Cracraft would sustain the challenges to ballots of the laid-off employees." Like the dissenting board member, we also conclude that "the statements made to each of the employees on the occasion of their layoffs were vague as to when and if the employees were to be recalled." We also conclude that the employer's statements to employees, Gage, Tyree, and Nash would *"not ...* support a finding that the layoffs were temporary." (emphasis added). In summary, we agree with member Cracraft's basic conclusion [2]:

1. The NLRB subsequently determined that Pepus was entitled to vote. Pepus' vote is not an issue for this appeal.

2. Footnote 15 of the NLRB's decision constitutes a concise statement of the decision of the dissenting member, who would set aside the ALJ's rulings, findings, and conclusions against Ideal on this record.

[T]he Respondent has established on the basis of the surrounding objective facts (those which are relied on in reversing the judge's finding that the layoffs were not discriminatory), that there is not a reasonable expectancy of recall.

The board member's dissent adds that the changes at Ideal with regard to installation of new machinery "necessitated the layoff[s]," and "were not the type of changes ... reflective of fluctuations in the workload which would support a finding that employees could reasonably expect ... [to] be recalled."

The NLRB spent twelve pages of its decision explaining that the ALJ was incorrect in finding that the layoffs of Gage, Tyree, and Nash were unlawful. Rather, it found that Ideal had a "need for fewer packers ... before the start of the union campaign."[3] The NLRB found it important, and we agree, that it continue its analysis of the employee work hour situation at Ideal beyond May of 1986. There was a good business reason for the layoffs. No one was hired to replace the employees laid off. We, accordingly, find no basis to hold that any of these employees had a reasonable expectation of recall.

The NLRB cited no case authority for its holding to the contrary, nor did the ALJ in his discussion of "voting eligibility." This court reviews the NLRB's decisions to ensure they are supported by substantial evidence. *NLRB v. State Planning & Finishing Co.*, 738 F.2d 733, 737 (6th Cir.1984); 29 U.S.C. § 160(e).

*NLRB v. Franklin Art Glass Studios, Inc.*, 675 F.2d 106 (6th Cir.1982), held, without elaboration or a hearing, that an "employee on sick leave due to a work-related injury had a reasonable expectation of being re-called," and that two laid off employees were eligible to vote.[4] None of these Ideal employees had a work-related injury; none were on a sick leave; all were recent hires in a work environment requiring consistently fewer employee work hours, and *Franklin Art Glass* offers no rationale or factual detail in respect to its holding on eligibility.

In *Sol–Jack Co.*, 286 N.L.R.B. 1173 (1987), the NLRB reversed the ALJ's finding of reasonable expectation of recall despite the testimony of the laid off employee that a "part-owner" had told him that "he might be back to work in 1 or 2 weeks." On the election day about three weeks later, however, the employer told the employee in question that the layoff was permanent. The test described in *Sol–Jack* was a consideration of "all the facts and circumstances in the record ... on the date of election, [to determine whether] ... an individual *will* return to work in the near future." (emphasis added). The NLRB in *Sol–Jack* considered the employers' past experience, its future plans, and the circumstances of the layoff, and found "[w]hen the objective factors involved indicate a laid-off employee had no reasonable expectancy of recall, vague statements by the employer about the chance or possibility of the employee being hired will not overcome the totality of the evidence to the contrary." The instant case has circumstances comparable to those in *Sol–Jack*. Based on the *Sol–Jack* rationale, we conclude that there was no *reasonable expectation* of recall in the near future. It was significant in *Sol–Jack* and in the situation of Ideal that both had a sound business reason for laying off the employees unrelated to any union campaign.

**3.** Footnote 11 of the NLRB decision explains the rationale for its conclusion reversing the ALJ's decision in this regard by analyzing monthly hours worked: November, 1985, 2788 (5 week total); December, 2187; January, 1986, 2254; February, 1999; March, 1963; April, 1607; May, 1967 (for 5 weeks); June, 1627; July, 1140 (for 3 weeks).

**4.** We have not ignored *Franklin Art Glass Studios*, which sets out:

We agree with the Board that no hearing was necessary regarding the three challenged ballots. Based upon the undisputed facts, the Board was entitled to conclude that the two laid-off employees casting these ballots and the one employee on sick leave due to a work-related injury had a reasonable expectation of being recalled.
675 F.2d at 106. *Franklin Art Glass Studios* did not elaborate on its decision and, thus, it is difficult to understand the dissent's lengthy interpretation of its cursory decision.

We addressed a similar issue in *NLRB v. Apex Paper Box Co.*, 976 F.2d 733 (6th Cir.1992) (Table disposition), where this court applied the proper test to the facts, explaining:

> Although the general test for determining temporary layoff is reasonable expectancy of recall, the test is only a prediction. As the employees were recalled prior to the election, the reasonable expectancy of recall test is inapplicable, as a predictive test is not necessary. Nevertheless, the laid-off employees had a reasonable expectancy of recall, as: (1) their layoff was not due to either a temporary or a permanent loss of business; (2) Employer's business remained strong, as steps to resume lost production and recall the laid-off employees were taken immediately; (3) Employer urged the employees to remain in contact with them; (4) every qualified employee who completed an application was recalled; and (5) the recalls took place both before and after the payroll eligibility cutoff date.[5]

In *Apex Paper Box*, this court applied the substantial evidence test and reversed the NLRB's conclusion, as we do in this case.

The total number of employees in the pertinent department of Ideal reflects and objectively supports the NLRB's finding that the layoffs in question were a part of the declining need for packer employees. There were 18 in November, 1985; 13 in March, 1986; 10 in April, 1986; and 10 in August, 1986. The controverted statements by the employer representative are certainly inconsistent with the actual employment facts, and were, at best, vague and ambiguous, even if credited by the ALJ.[6] The NLRB's finding that the layoffs were not unlawful due to the business needs of the company supports this decision. There was not substantial evidence to predict the re-hire of these employees at the time of the election. There is no legal precedent cited on comparable facts, which would support the summary and cursory decision of the NLRB in this case. We affirm the reasoning of the NLRB on the legality of the layoffs, but we find the decision on reasonable expectation of recall to lack a substantial basis of support.

For the reasons indicated, we REVERSE the NLRB on the pivotal issue of recall in this case and set aside its order and direction requiring Ideal to recognize the union.

---

BOYCE F. MARTIN, Jr., Circuit Judge, dissenting.

I dissent for the simple reason that *NLRB v. Franklin Art Glass Studios, Inc.*, 675 F.2d 106 (6th Cir.1982), established the legal standard in this circuit for determining whether laid-off employees should vote in representation elections. They have the right to vote in representation elections if, at the time of the elections, they have a reasonable expectation of recall. *Id.* The Board made the specific factual finding that these laid-off employees had a reasonable expectation of recall, and that finding is supported by substantial evidence, the testimony of the employees. The majority rejects this finding out of hand, applying its own factual conclusions instead, despite the dictates of *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and *Arkansas v. Oklahoma*, — U.S. —, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992).

I believe that *Franklin Art* established the legal standard in this circuit, at least until a contrary *en banc* decision, for determining whether laid-off employees should be allowed to vote in representation elections. This court quite specifically allowed

---

**5.** The dissent is critical of our reviewing the facts underlying the Board's decision. This test, as found in *Apex,* requires this court to look to several factors, most of which require a review of the facts.

**6.** We note a further matter of concern in this case. The election in question occurred in May, 1986. The ALJ rendered his decision in February, 1988. The NLRB did not render its decision for another three years, and we now decide this case still a year later. In in light of the closeness of the prior election almost seven years ago, it would be better for all concerned to have a new election if the employees of Ideal pursue their right to have this union (or another) represent them. *See NLRB v. Thill, Inc.,* 980 F.2d 1137 (7th Cir.1992).

the three employees in *Franklin Art* to vote in the representation election because the employees "had a reasonable expectation of recall." *Franklin Art*, 675 F.2d at 106. This is the legal standard which we must use in this case, coupled with the factual findings of the Board that are supported by substantial evidence.

The majority cites two decisions, *Sol-Jack Co.*, 286 N.L.R.B. 1173 (1987), and *NLRB v. Apex Paper Box Co.*, 976 F.2d 733 (6th Cir.1992) (unpublished opinion), apparently for the proposition that many objective factors should be examined in determining eligibility for voting in representation elections. Neither of those cases changes the *Franklin Art* test. *Sol-Jack Co.*, 286 N.L.R.B. 1173 (1987), cannot change the precedential effect of *Franklin Art* because the Board does not have the power to change this circuit's interpretation of the National Labor Relations Act. In addition, *NLRB v. Apex Paper Box Co.*, 976 F.2d 733 (6th Cir.1992) (unpublished opinion), affirms the *Franklin Art* test. In *Apex Paper Box*, the Board refused to allow *formerly* laid-off employees, who were nonetheless employees at the time of the representation election, to vote in the representation election. In reversing the Board's conclusion of law, this court simply refused to allow the Board to apply the *Franklin Art* test to formerly laid-off employees who were recalled and working on the date of the election.

If the majority believes that the standard for determining eligibility for voting in representation elections should be an objective standard, then the majority should say so and explain how that standard is consistent with *Franklin Art.* I understand the *Franklin Art* standard to be partly objective and partly subjective: what did the laid-off employees expect and was their expectation reasonable? If the majority disagrees with this standard, then the Board needs to know. As it stands, the Board is left with little guidance for determining the voting eligibility of laid-off employees in representation elections in this circuit.

In addition to using an altered legal standard, the majority writes, "We ... find no basis to hold that any of those employees had a reasonable expectation of recall." This conclusion is contrary to the findings of fact made by the administrative law judge who observed the witnesses before him and whose findings were upheld by the Board. In reaching its conclusion, the majority does not follow the substantial-evidence standard described in *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The Board made a specific factual finding that these employees had a reasonable expectation of recall. That specific factual finding is supported by the testimony of the employees regarding what they were told when they were laid off. The employees' testimony as to their expectations is substantial evidence which this court is in no position to reject. By concentrating on the evidence which supports its factual conclusions, such as the business history of Ideal Macaroni, the majority commits the same error that the Supreme Court recently criticized in *Arkansas v. Oklahoma*, —— U.S. ——, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). In that case, the Tenth Circuit rejected the factual findings of an administrative agency by citing other factual findings of the agency for an opposite conclusion. The Supreme Court, in reversing the circuit court, wrote, "The [reviewing] court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence." *Id.* at ——, 112 S.Ct. at 1060.

As a final matter, I am concerned that the majority, in footnote six, indicates that one reason to refuse to enforce the Board's petition is because this case has lasted for so many years. By ruling for Ideal Macaroni, the majority uses that company's delay and intransigence as an excuse to reward the company. I could never agree with such a result.

In my opinion, the Board properly allowed the three employees to vote in this representation election, and the petition for enforcement should be granted.