REVISED - June 2, 2000

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-10096
_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JAMES TRUESDALE; RONALD HAMILTON

Defendants - Appellants

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

May 5, 2000

Before KING, Chief Judge, and DUHÉ and DeMOSS, Circuit Judges.

KING, Chief Judge:

Defendants-Appellants James Truesdale and Ronald Hamilton appeal from the district court's denial of their joint application for reimbursement of attorney's fees. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case revisits the story of an offshore sports wagering enterprise that is well-chronicled in one of our previous opinions. See United States v. Truesdale, 152 F.3d 443 (5th Cir. 1998). Defendants-Appellants James Truesdale and Ronald Hamilton

("Appellants"), along with two others, were indicted and tried on multiple charges, including conspiracy, money laundering, and conducting an illegal gambling operation.  There was evidence at trial that bets were placed over toll-free numbers that terminated in offices offshore, where such activity is legal; however, toll-free numbers also terminated at Appellants' homes, but these lines were used for information purposes only.  There was also evidence that Appellants received money in Texas to establish betting accounts, that they deposited the money received in Texas bank accounts, and that they paid winners out of accounts held in Texas.  Appellants and their co-defendants were convicted of several of the charges, including conducting an illegal gambling operation.  On direct appeal, we reversed their convictions on all counts.  See id. at 450.

18 U.S.C. § 1955 was the basis for the illegal gambling operation charge.  It prohibits "conduct[ing], financ[ing], manag[ing], supervis[ing], direct[ing], or own[ing] all or part of an illegal gambling business."  18 U.S.C. § 1955(a) (1994). An illegal gambling business is defined, in part, as one that "is in violation of the law of the State or political subdivision in which it is conducted."  18 U.S.C. § 1955(b)(1)(i) (1994).  As we explained in the direct appeal of Appellants' and their co-defendants' convictions:

> In order to meet the first prong (violation of state law), the indictment alleged that appellants' gambling operation was being conducted in violation of Chapter 47,

2

Gambling, of the Texas Penal Code. The indictment did not cite a specific provision within this chapter, but it alleged only "bookmaking." Additionally, the government's case focused entirely on and the jury charge instructed only on the "bookmaking" provisions of Chapter 47. Chapter 47 defines "bookmaking" as follows:

> (A) to receive and record or to forward more than five bets or offers to bet in a period of 24 hours;
> (B) to receive and record or to forward bets or offers to bet totaling more than $1,000 in a period of 24 hours; or
> (C) a scheme by three or more persons to receive, record, or forward a bet or an offer to bet.

Tex. Penal Code § 47.01(2)(A)-(C).

> Under Texas law "bookmaking" is illegal, and if a person intentionally or knowingly commits "bookmaking," he commits the offense of gambling promotion. Tex. Penal Code § 47.03(a)(2). Bookmaking, however, is not the only activity that constitutes gambling promotion. Section 47.03(a) lists five separate categories of activity (including "bookmaking") each of which can constitute gambling promotion. Section 47.03(a) makes it a separate offense for an individual, for gain, to "... become[ ] a custodian of anything of value bet or offered to be bet[.]" Tex. Penal Code § 47.03(a)(3). In this case, neither the indictment nor the jury charge nor the government's argument alluded to this section. The indictment only mentioned bookmaking and the jury charge only tracked the language of sections 47.01(2) and 47.03(a)(2).

Truesdale, 152 F.3d at 446-47. The evidence in the case indicated "that the bookmaking activities occurred outside the United States" and not in the state of Texas, as § 1955 requires. Id. at 447. There was evidence that Appellants had the capability to accept bets in Texas and that callers attempted to place bets in Texas, and a notebook seized at Hamilton's residence could have indicated that bets were being taken in Texas. However, the opinion noted that Appellants went to great

3

lengths to ensure that their business was conducted legally.  See id. at 448.  In sum, "the circumstantial evidence . . . [did] not furnish an adequate basis from which a reasonable juror could conclude beyond a reasonable doubt that the appellants were engaged in bookmaking."  Id. at 448-49.  We indicated that there may have been some evidence that Appellants became custodians of gambling money in violation of section 47.03(a)(3), but the government did not indict them on that section, try them on that section, or instruct the jury on that section.

Following our decision, Appellants' co-defendants moved the district court for reimbursement of attorneys' fees under the so-called Hyde Amendment,[1] and Appellants soon followed suit.  The

_____

[1] The Hyde Amendment was passed in order to provide the reimbursement of attorney's fees to defendants in certain criminal cases.  It provides:

> During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) pending on or after the date of the enactment of this Act, may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.  Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code.  To determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence ex parte and in camera (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal. Fees and other expenses

4

district court denied their co-defendants' motion, which denial was never appealed, and it further denied Appellants' motion in an order entered on December 22, 1998. Appellants filed a notice of appeal ("NOA") on January 20, 1999, twenty-nine days after the district court's order was entered. Before reaching the merits of Truesdale and Hamilton's appeal, we must decide whether their NOA was timely filed.

## II. APPELLATE JURISDICTION: RULE 4(a) OR 4(b)?

Federal Rule of Appellate Procedure 4 governs the time period during which an NOA may be filed. "A timely notice of appeal is necessary to the exercise of appellate jurisdiction." United States v. Cooper, 135 F.3d 960, 961 (5th Cir. 1998) (citing United States v. Robinson, 361 U.S. 220, 224 (1960)). Simply put, if a notice of appeal is untimely, we cannot entertain the merits of a case. In order to establish the timeliness of the NOA filed in the instant appeal, we must begin by determining whether it is governed by Rule 4(a)[2] or Rule

---

awarded under this provision to a party shall be paid by the agency over which the party prevails from any funds made available to the agency by appropriation. No new appropriations shall be made as a result of this provision.

Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997), reprinted in 18 U.S.C. app. § 3006A (Supp. III 1997).

[2] Rule 4(a) provides, in pertinent part, that, "[i]n a civil case, . . . the notice of appeal . . . must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." FED. R. APP. P. 4(a)(1)(A). This time

5

4(b).[3]  Only one other court of appeals has addressed this issue.

In United States v. Robbins, the Court of Appeals for the Tenth

Circuit held that an appeal from a district court's denial of a

motion filed under the Hyde Amendment is governed by Rule 4(b).

See 179 F.3d 1268, 1270 (10th Cir. 1999).

At the outset, what is most important here is to establish a

clear rule governing NOAs in cases like this one.  Unfortunately,

however, the text of the Hyde Amendment does not clearly

establish whether Rule 4(a) or 4(b) should apply.  A compelling

case can be made that Rule 4(b) should apply to this case and

others like it.  The Hyde Amendment clearly states that "the

court, in any criminal case . . . may award to a prevailing party

. . . a reasonable attorney's fee . . . ."  Pub. L. No. 105-119,

§ 617, 111 Stat. 2440, 2519 (1997), reprinted in 18 U.S.C. app.

§ 3006A (Supp. III 1997) [hereinafter "Hyde Amendment"].  This

language can be read as signaling that a Hyde Amendment motion

arises in a criminal case.  See Robbins, 179 F.3d at 1270.  On

the other hand, the language can be read as simply signaling that

the provision is intended to provide relief when, "in any

criminal case . . . the court finds that the position of the

---

period is extended to 60 days when the United States is a party.
See FED. R. APP. P. 4(a)(1)(B).

[3] Rule 4(b) provides, in pertinent part, that, "[i]n a
criminal case, a defendant's notice of appeal must be filed in
the district court within 10 days after . . . the entry of either
the judgment or the order being appealed . . . ."  FED. R. APP. P.
4(b)(1)(A).

United States was vexatious, frivolous, or in bad faith."  Id.
The latter reading does not necessitate the conclusion that the
motion itself is a part of the underlying criminal case.  For the
reasons that follow, we conclude that the latter reading is
appropriate.  We are consequently unable to join the Tenth
Circuit's conclusion and decide that Rule 4(a) governs an appeal
from a district court's ruling on a motion filed under the Hyde
Amendment.

Citing United States v. Young, 966 F.2d 164, 165 (5th Cir.
1992), and United States v. De Los Reyes, 842 F.2d 755, 757 (5th
Cir. 1988),[4] the government argues that, like a motion to correct
sentence under Federal Rule of Criminal Procedure 35, "a motion
for reimbursement of attorney's fees and costs, pursuant to the
Hyde Amendment, should be considered part and parcel of the
criminal matter rather than a separate civil proceeding."
Government's Brief at 19.  The government provides no support for

---

[4] In each of those cases, the defendant appealed from the
district court's disposition of a motion to correct sentence
under Rule 35 of the Federal Rules of Criminal Procedure, and in
both cases, the notice of appeal was filed outside of the window
allowed by Rule 4(b) but inside the window allowed by Rule 4(a).
We recognized that "[a]n appeal from a ruling on a Rule 35 motion
is considered part of the original criminal proceeding and must
be taken within the ten days provided by [Rule 4(b)]."  De Los
Reyes, 842 F.2d at 757.  We also recognized in each case that the
same motion could have been raised in a proceeding under 28
U.S.C. § 2255, in which case the sixty-day window in Rule
4(a)(1)(B) would have applied.  Citing "the liberality accorded
to pro se filings," id., we decided to treat the ill-styled
motions as § 2255 motions and found jurisdiction to entertain the
appeals.

7

this argument, and after comparing a motion under the Hyde Amendment to a Rule 35 motion, we cannot agree.  A Rule 35 motion deals directly with the movant's liberty interest, precisely the sort of consideration that has been cited to support the shorter filing period under Rule 4(b).  See United States v. Craig, 907 F.2d 653, 656 (7th Cir. 1990) ("The shorter time limit for criminal appeals furthers the public interest in the prompt resolution of criminal proceedings.  Neither the interests of society nor of individual criminal defendants are served by a plodding appellate process that could change the results of a trial, often while the defendant has already begun to serve a sentence of incarceration.").  A motion under the Hyde Amendment, on the other hand, does not implicate the movant's liberty interest.  Indeed, as we discuss shortly, the interests it implicates are identical to those implicated by a motion for attorney's fees under 28 U.S.C. § 2412, the Equal Access to Justice Act (the "EAJA"), the procedures and limitations of which, with a few exceptions, are made applicable to proceedings under the Hyde Amendment.  The longer time period provided in Rule 4(a) applies to proceedings under the EAJA.  We find the comparison of a motion filed pursuant to the Hyde Amendment to one filed under the EAJA a closer analogy  than the Rule 35 comparison provided by the government on brief.

We have in the past used this sort of analogy to decide which Rule 4 time period to apply.  For example, United States v.

8

Cooper, 876 F.2d 1192 (5th Cir. 1989), dealt with a petition for a writ of error coram nobis. We determined that such a petition was equivalent to a motion under 28 U.S.C. § 2255, the difference being that a § 2255 motion is made by a person in federal custody and a petition for a writ of error coram nobis is filed by a person who has been released. We explained that the rules governing § 2255 cases state specifically that Rule 4(a) applies to such motions, see Rule 11 Governing § 2255 Proceedings for the United States District Courts, 28 U.S.C. app. § 2255 (1994), and concluded that Rule 4(a) should apply to an appeal from the denial of the petition, just as the Rules Governing § 2255 Proceedings specifically apply Rule 4(a) to an appeal from a denial of a § 2255 motion. Two cases cited by Appellants from the Court of Appeals for the Seventh Circuit similarly apply Rule 4(a) after comparing the proceeding at issue to a § 2255 proceeding. See Betts v. United States, 10 F.3d 1278 (7th Cir. 1993) (petition for a certificate of innocence); United States v. Craig, 907 F.2d 653 (7th Cir. 1990) (petition for a writ of error coram nobis).

Here, a motion under the Hyde Amendment is equivalent to a motion under the EAJA. In each case, the movant is seeking an award of attorney's fees based upon a litigating strategy employed by the government that, the movant claims, conflicts with certain statutorily defined notions of fair play. It makes little sense that the time period during which the movant may

file an NOA from the denial of such a motion should differ depending upon whether the government's potentially offensive litigation strategy was employed in a civil case or a criminal case. Our comparison of Hyde Amendment motions to EAJA motions is bolstered by Congress' direction that the procedures and limitations of the EAJA are, with limited exceptions, incorporated into the Hyde Amendment.[5]

Finally, it could prove problematic for the government were we to hold that a motion filed pursuant to the Hyde Amendment is part and parcel of the underlying criminal case and therefore subject to the Rule 4(b) filing period. As a general rule, the government cannot, without statutory authority, appeal from a decision in a criminal case. See United States v. Sanges, 144 U.S. 310, 312 (1892). While the question is not before us, we are aware of no statute that authorizes the government to appeal from a ruling on a motion for an award of fees in a criminal case.[6] We anticipate that holding as the government argues would

---

[5] We agree that application of the Rule 4(a) appeals period is not a procedure contained directly within the text of the EAJA. But, as we see it, Congress' direction that the procedures of the EAJA should apply to proceedings under the Hyde Amendment evinces its intent that, absent statutory direction to treat the proceedings differently, the case giving rise to the motion for an award of fees does not control, and Hyde Amendment proceedings and EAJA proceedings should be conducted in a like manner.

[6] We suspect that because of the Tenth Circuit's construction of 28 U.S.C. § 3731, which authorizes the government to appeal in certain criminal cases, this concern was not apparent to the panel that decided Robbins. Compare United States v. Prescon Corp., 695 F.2d 1236, 1240 (10th Cir. 1982)

10

create a situation in this circuit where a movant would be entitled to appeal from an adverse ruling on a motion filed pursuant to the Hyde Amendment, but the government would not be afforded the same privilege. We cannot imagine that the Congress intended such a result and are unwilling, absent clearer statutory direction, to establish precedent in this circuit lending support to such an outcome. If Congress had indeed desired these sorts of proceedings to be treated as part and parcel of the underlying criminal case, we would have expected a path to have been established for the government to appeal. We conclude that Rule 4(a) applies to an appeal from a ruling on a motion pursuant to the Hyde Amendment.

Having so decided, we are left with one last jurisdictional question: Is the NOA in this case fatally premature? Rule 4(a)(1)(B) provides that when the United States is a party to a civil case, the NOA "may be filed . . . within 60 days after the judgment or order appealed from is entered." Rule 4(a)(2) provides that an NOA "filed after the court announces a decision or order--but before the entry of the judgment or order--is treated as filed on the date of and after the entry." Under Rule 4(a), entry occurs "when [the judgment or order] is entered in

(section 3731 authorizes any government appeal from a final order that does not implicate the Double Jeopardy Clause) with United States v. Denson, 588 F.2d 1112, 1125, adopted en banc, 603 F.2d 1143, 1145 (5th Cir. 1979) (section 3731 only authorizes appeals from orders similar to those in it).

11

compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure."  FED. R. APP. P. 4(a)(7).

Federal Rule of Civil Procedure 79(a) requires that the decision of the district court be recorded on the civil docket. Here, the ruling below was recorded on the criminal docket. It has therefore never been entered in strict compliance with Rule 4(a)(7), and an argument can be made that an appeal is not perfected under Rule 4(a)(2) until so entered.  Neither party has argued, however, that our appellate jurisdiction is defeated by the failure of the clerk of the district court to record the ruling in this case on the civil docket, and we can see no reason why our jurisdiction should be so defeated.  Were we to dismiss this action for lack of jurisdiction, "the district court would simply [enter its judgment on the civil docket], from which a timely appeal would then be taken.  Wheels would spin for no practical purpose."  <u>Bankers Trust Co. v. Mallis</u>, 435 U.S. 381, 385 (1978).  We find it unnecessary to dismiss this action for two reasons.

First, what is important is that the judgment of the district court be final,[7] which it obviously was in this case, and the appellee, the government here, not be misled or

---

[7] "For a ruling to be final, it must end the litigation on the merits and the judge must clearly declare his intention in this respect."  <u>Firstier Mortgage Co. v. Investors Mortgage Ins. Co.</u>, 498 U.S. 269, 273-74 (1991) (citations and internal quotation marks omitted).

12

prejudiced by the fact that the judgment was recorded on the criminal docket.  See Mallis, 435 U.S. at 387; Firstier Mortgage Co. v. Investors Mortgage Ins. Co., 498 U.S. 269, 276 (1991). The government was neither misled nor prejudiced in this case.

Second, in the past we have not found our jurisdiction defeated by a judgment being entered on the wrong docket.  In Smith v. Smith, 145 F.3d 335 (5th Cir. 1998), we were confronted with an appeal from a criminal contempt ruling that was entered on the civil docket.  We determined that we did not need to decide whether Rule 4(a) or 4(b) applied, because the notice of appeal was timely in either case.  See id. at 339.  Implicit in that decision was a determination that the entry of judgment on the civil docket did not defeat jurisdiction if the case was criminal and Rule 4(b) applied.  It follows that the converse should hold true in this case, and we determine that we have jurisdiction to entertain the appeal.

### III.  STANDARD OF REVIEW

In Pierce v. Underwood, the Supreme Court determined that a district court's decision regarding an award of attorney's fees under the EAJA was subject to appellate review under the abuse of discretion standard.  See 487 U.S. 552, 563 (1988).  Appellants argue that the factors articulated in Pierce militate against an abuse of discretion standard and support de novo review in this

case.  We disagree and conclude that the close ties between the EAJA and the Hyde Amendment coupled with an application of the factors relied upon by the Court in Pierce support an application of the abuse of discretion standard.[8]

Awards made pursuant to the Hyde Amendment "shall be granted pursuant to the procedures and limitation (but not the burden of proof) provided for an award under [the EAJA]."  Hyde Amendment, supra.  The proper standard of appellate review is not one of the procedures and limitations of the EAJA, but the language of the Hyde Amendment indicates Congress' intent to have proceedings under the Hyde Amendment treated similarly to those under the EAJA.  While the language quoted above does not conclusively determine the proper standard of review, the tie-in between the two provisions lends support to finding that the same standard applies in both situations.

In Pierce, the Supreme Court considered several factors in determining the correct standard of review for EAJA proceedings. First, the Court looked to the language of the statute itself. The EAJA

> provides that attorney's fees shall be awarded "unless the court finds that the position of the United States was substantially justified."  28 U.S.C. § 2412(d)(1)(A) (emphasis added).  This formulation, as opposed to simply

---

[8] In United States v. Gilbert, the Court of Appeals for the Eleventh Circuit, the only other circuit court to consider the proper standard of review for Hyde Amendment cases, likewise determined that an abuse of discretion standard was appropriate. See 198 F.3d 1293, 1298 (11th Cir. 1999).

14

> "unless the position of the United States was substantially justified," emphasizes that the determination is for the district court to make, and thus suggests some deference to the district court on appeal.

Pierce, 487 U.S. at 559. The Hyde Amendment similarly provides that "the court . . . may award . . . a reasonable attorney's fee . . . where the court finds that the position of the United States was vexations, frivolous, or in bad faith . . . ." Hyde Amendment, supra (emphasis added). The similar language in the Hyde Amendment supports deference to the district court's decision as well.

The Court in Pierce also considered whether "'one judicial actor is better positioned than another to decide the issue in question.'" 487 U.S. at 560 (quoting Miller v. Fenton, 474 U.S. 104, 114 (1985)). The Court noted that some aspects of the government's litigating strategy may be known only to the district court. Also, the circuit court may have to spend inordinate time becoming more familiar with the record than is usually required for appeals in order to evaluate not only the merits of the case, but also the government's litigating strategy. While the Hyde Amendment deals with criminal cases rather than civil cases, we find these considerations weigh equally in favor of applying a deferential level of review in Hyde Amendment appeals. The district court is much more familiar with the ins-and-outs of the case, and its judgment will often reflect its unique perspective. Applying a less deferential

15

standard of review would show disrespect for that unique perspective.

Finally, the Supreme Court recognized that flexibility was needed in the area in order for the "substantially justified" standard to develop. "[T]he question . . . is . . . little susceptible, for the time being at least, of useful generalization, and likely to profit from the experience that an abuse-of-discretion rule will permit to develop." Id. at 562. The "vexatious, frivolous, or in bad faith" standard of the Hyde Amendment, along with the "for good cause shown" standard that governs whether the court may receive evidence in camera and ex parte, will similarly benefit from the experience envisioned by the Supreme Court in Pierce. We conclude that an abuse of discretion standard should apply to appeals from judgments in Hyde Amendment proceedings.

Legal determinations underlying the district court's decision are, however, reviewed de novo. See Spawn v. Western Bank-Westheimer, 989 F.2d 830, 839 (5th Cir. 1993). "As Judge Friendly has stated, '[i]t is not inconsistent with the discretion standard for an appellate court to decline to honor a purported exercise of discretion which was infected by an error of law.'" Id. (quoting Abrams v. Interco, Inc., 719 F.2d 23, 28 (2d Cir.1983)).

## IV. APPELLANTS' RIGHT TO DISCOVERY AND A HEARING

We begin by disposing of Appellants' argument that the Hyde Amendment entitles them to discovery and a hearing as a matter of right.  For this proposition, Appellants cite <u>United States v. Gardner</u>, 23 F. Supp. 2d 1283 (N.D. Okla. 1998).  There, however, the court explained that the movant had requested discovery and the government opposed that request.  <u>See</u> <u>id.</u> at 1295-96.  That is not the case here.  Appellants do not allege that they moved for discovery or a hearing in the district court, and our independent review of the record likewise reveals no such motion.  The scope of discovery allowable or required upon request of a movant for attorney's fees pursuant to the Hyde Amendment is therefore not an issue we need address in this case.  We must decide only whether the district court abused its discretion by ruling on Appellants' motion without granting discovery or a hearing, despite the fact that neither was requested.

The Hyde Amendment provides that, "[t]o determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence ex parte and in camera . . . and evidence or testimony so received shall be kept under seal."  Hyde Amendment, <u>supra</u>.  The Amendment, as originally introduced by Representative Hyde, included no such provision.  <u>See</u> 143 Cong. Rec. H7786-04, H7791 (daily ed. Sept. 24, 1997).

17

The provision was added in response to concerns voiced by some members of the House regarding

> the after-the-fact exercise required under [the Hyde Amendment] to determine justification for prosecution. . . . There may be evidence that was relied upon in good faith by the prosecution in coming to its decision to prosecute, but was later suppressed at trial; there may be disclosure or required disclosure and compromise of confidential sources or law enforcement techniques . . . .

Id. at H7793 (remarks of Representative Rivers).  See also Gilbert, 198 F.3d at 1300-01.

Appellants assert that Representative Rivers's remarks were made at a time when the government was expected to bear the burden of proof under the Amendment.  They argue that the burden was changed to the defendant, yet the Amendment still provides for the confidential submission of evidence.  They conclude that it "stand[s] to reason that Congress intended for the claimant to have access to evidence except such evidence which is confidential, and such evidence is to be presented to the court in camera."  Appellants' Brief at 21-22.  We disagree.  It appears the provision for in camera review of evidence was included to enable the government to defend itself against Hyde Amendment motions and at the same time protect confidential information.  We do not read the Amendment as providing for discovery and a hearing as a matter of right.

The EAJA, the procedures and limitations of which are incorporated into the Hyde Amendment, provides that:

18

> Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B) (1994). The government argues that this provision is a procedure contained in the EAJA, and that it is therefore incorporated into the Hyde Amendment, except to the extent that the latter provides otherwise. The government contends that the language of the Hyde Amendment "suggests that a district court has latitude to permit an expansion of the record, for good cause, beyond that available under the EAJA, while at the same time providing necessary safeguards." Government's Brief at 31. The government's reading of the Amendment seems reasonable, but we need not today determine the situations under which discovery or a hearing is allowed or required, assuming either is allowed at all. It is clear that the Amendment, especially when read in conjunction with the EAJA, does not provide for discovery or a hearing as a matter of right. The district court, therefore, did not abuse its discretion in ruling on Appellants' motion without first affording them an opportunity for discovery or a hearing, because no motion for either was ever filed with the court.

## V.  THE BURDEN AND LEVEL OF PROOF

19

Both parties argue that in order to recover attorney's fees as a prevailing party, the Appellants bear the burden of proof under the Hyde Amendment to show by a preponderance of the evidence that the government's position was vexatious, frivolous, or in bad faith. We agree. The Hyde Amendment provides that awards under it "shall be granted pursuant to the procedures and limitation (but not the burden of proof) provided for an award under [the EAJA]." Hyde Amendment, <u>supra</u>. It is clearly established that, under the EAJA, the government bears the burden of proof with regard to its litigating position. See <u>United States v. 5,507.38 Acres of Land</u>, 832 F.2d 882, 883 (5th Cir. 1987). The language of the Hyde Amendment expresses a desire to shift that burden to the movant. The only other court of appeals that has addressed this issue agrees that the movant bears the burden of proof. See <u>Gilbert</u>, 198 F.3d at 1304.

Under the EAJA, the government must prove by a preponderance of the evidence that its position was substantially justified. See <u>United States v. One Parcel of Real Property</u>, 960 F.2d 200, 208 (1st Cir. 1992). The Hyde Amendment changes only the party with whom burden of proof lies, not the level of proof by which the claim must be established. We conclude that a party moving for an award of attorney's fees under the Hyde Amendment must establish by a preponderance of the evidence that the government's position was vexatious, frivolous, or in bad faith.

20

## VI.  THE VEXATIOUS, FRIVOLOUS, OR IN BAD FAITH STANDARD

The EAJA directs courts to award "to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was <u>substantially justified</u> or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (1994) (emphasis added).  The Supreme Court has interpreted the phrase substantially justified to mean "justified to a degree that could satisfy a reasonable person." <u>Pierce</u>, 487 U.S. at 565.  The Court equated a substantially justified position with one having a "reasonable basis in law and fact."  <u>Id.</u> at 566 n.2.  The Hyde Amendment, on the other hand, allows a district court in a criminal case to "award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigating expenses, where the court finds that the position of the United States was <u>vexatious, frivolous, or in bad faith</u>, unless the court finds that special circumstances make such an award unjust."  Hyde Amendment, <u>supra</u> (emphasis added).  Appellants suggest that, other than the switched burden of proof, the standards in the EAJA and the Hyde Amendment are the same; a movant may succeed under the Hyde Amendment if he establishes that the prosecution was not substantially justified.  The language of the two provisions and the legislative history prove otherwise.

The Hyde Amendment, as originally introduced on the floor of the House, made attorney's fees available absent special circumstances making such an award unjust, "unless the court finds that the position of the United States was substantially justified." 143 Cong. Rec. H7786-04, H7791 (daily ed. Sept. 24, 1997). In discussing the proposed Amendment, Representative Hyde drew parallels between it and the EAJA. As far as the standard applicable in such proceedings, he stated that the Amendment "ought to protect anybody who is abused by a suit that is not substantially justified. . . . What is the remedy, if not this, for somebody who has been unjustly, maliciously, improperly, abusively tried by the Government . . . ." Id. at H7792. Representative David Skaggs responded to these comments, stating, "I think the gentleman proves too much. Were the words 'malicious' and 'abusive' in his amendment, and maybe those are criteria that also ought to be introduced, it would be a different matter." Id. The standard was eventually changed to "vexatious, frivolous, or in bad faith" in the Conference Committee. See Gilbert, 198 F.3d at 1301-02. This change signifies Congress' desire to limit the scope of the Amendment. A movant under the Hyde Amendment must prove more than just that the government's position was not substantially justified. See id. at 1302, 1304; cf. Pierce, 487 U.S. at 566 ("To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness . . . .").

22

## VII.  APPELLANTS' CASE

The district court seems to have agreed with Appellants'
position.  It held that a motion filed pursuant to the Hyde
Amendment can succeed only if the movant can "establish that the
government did not possess sufficient evidence that could satisfy
a reasonable person to believe that the prosecution . . . had a
reasonable basis in law and fact."  Memorandum Opinion and Order
denying a motion by Richard Jones and Sandra Miller, filed
December 7, 1998, at 4, incorporated by reference in Order filed
Dec. 22, 1998.  This conclusion was based on the district court's
ruling that, "because the procedures and limitations of the EAJA
apply to the Hyde Amendment, a prevailing party is not entitled
to an award if the government's position in the litigation was
'substantially justified.'" Id.

We disagree with the district court that a movant need only
prove that the government's position was not substantially
justified, i.e. that "a reasonable person considering the
government's evidence could [not] find that the prosecution of
defendants had a rational basis in both law and fact."  Id. at 5.
As previously explained, the "vexatious, frivolous, or in bad
faith" standard is more demanding on a movant than the "not
substantially justified" standard.  The district court was
correct, however, that if a movant is unable even to establish
that the prosecution was not substantially justified, he

23

certainly cannot establish that it was vexatious, frivolous, or brought in bad faith. The district court here concluded that Appellants failed to establish that the government's prosecution of them was not substantially justified. If the district court was correct in this conclusion, then it did not abuse its discretion in denying Appellants' Hyde Amendment motion, which calls for an even more demanding standard.

Appellants first argue that the government knew, or should have known, that they were not engaged in bookmaking in Texas, and that, therefore, the government's prosecution of them was vexatious and frivolous. According to Appellants, the government's star witness testified that no bets were taken in Texas. Appellants argue that this case "was clearly a situation where [a Dallas police officer involved in the case] was saying that the F.B.I. contended that the operation was illegal, and the F.B.I. was saying that they were relying on [the Dallas police officer's] training and experience in illegal gambling operations." Appellant's Brief at 33. Appellant's own description sounds more of confusion and sloppiness than vexatiousness or frivolousness. This conclusion is supported by the government's argument that there was some evidence that Appellants had broken state gambling laws by becoming custodians of gambling proceeds, but the government neglected to proceed on this theory, arguing instead only that Appellants broke state law by engaging in bookmaking.

24

In reaching its conclusion that Appellants had failed to establish that the government's position was not substantially justified, the district court relied on evidence that toll-free numbers terminated at Appellants' homes, Appellants paid out winnings from Texas bank accounts, the notebook found in Hamilton's house contained betting information, several callers attempted to place bets with federal agents on the toll-free lines terminating at Appellants' homes, and certain documents seized from Truesdale's home contained possible betting information. The district court had previously tied the "not substantially justified" standard to the "vexatious, frivolous, or in bad faith" standard, and it ruled that "[a]lthough this evidence was insufficient for a reasonable jury to find beyond a reasonable doubt that [Appellants] had engaged in bookmaking operations in Texas, it was sufficient evidence to indicate that the government's prosecution of Truesdale and Hamilton was neither vexatious, frivolous, nor in bad faith." Order filed Dec. 22, 1998, at 2. While we disagree with the standard the district court applied, we agree that Appellants failed to establish even that the government's position was not substantially justified. "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a speck or scintilla but it need not be a preponderance." Taylor v. Bowen, 782 F.2d 1294, 1298 (5th Cir. 1986). Because Appellants failed

25

even to establish that the government's prosecution of them was not substantially justified, they cannot establish that the prosecution was vexatious, frivolous, or in bad faith. The district court, therefore, did not abuse its discretion in denying Appellants' motion.

Finally, Appellants argue that the money laundering charges against them were brought in bad faith. Our independent review of the record reveals that Appellants failed to raise this issue before the district court. If a party raises an issue for the first time on appeal, it can prevail only if it shows that the district court committed a plain error that affects the party's substantial rights. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1423 (5th Cir. 1996) (en banc). If the trial court committed a plain error that affects a party's substantial rights, we may correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 736 (1993). Appellants have not made the requisite showings in this case.[9]

## VIII.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[9] We therefore need not address the issue of whether the Hyde Amendment provides relief if just a portion of the government's prosecution is vexatious, frivolous, or brought in bad faith.