**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 14-51314

United States Court of Appeals
Fifth Circuit

**FILED**
November 30, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

PRIVATE COUNSEL

Appellee

v.

DANIEL C. MORALES,

Defendant - Appellant

------------------------
CONSOLIDATED CASE 14-51323

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DANIEL C. MORALES,

Defendant - Appellant

Appeals from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and CLEMENT and ELROD, Circuit Judges.

No. 14-51314

EDITH BROWN CLEMENT, Circuit Judge.

In 2003, Daniel Morales, the former Attorney General of Texas, was convicted of mail fraud and of making and filing a false income tax return. During his criminal prosecution, the district court entered a protective order covering discovery materials produced by certain victims and third parties. More than a decade later, Morales moved to modify that protective order to permit the limited disclosure of certain documents. The district court denied that motion, and Morales now appeals.[1] Because Morales has not shown any changed circumstances justifying his requested modification, we affirm.

I.

Morales served as Attorney General of Texas from 1991 to 1999. During his tenure, he oversaw Texas's litigation against big tobacco companies. That litigation resulted in a gargantuan settlement and, indirectly, Morales's conviction and incarceration.

Morales hired a group of Texas law firms ("Private Counsel") to conduct the litigation against big tobacco. After several years of litigation, Private Counsel secured a $17.3 billion settlement and applied for the attorney's fees provided for in their agreement with Texas. On the day the case settled, Marc Murr—Morales's personal friend and campaign advisor—also applied for attorney's fees, even though he was not party to Private Counsel's agreement. In support of his application, Murr proffered retainer agreements between him and Texas that pre-dated the settlement agreement and that would entitle him to a gigantic attorney's fees award.

Murr never received that award, however, because authorities soon discovered that Morales had faked the purported agreements between Texas

---

[1] Morales also appeals the district court's denial of his motion for an extension of time to appeal. Because we hold that his appeal was timely even absent the extension, we dismiss that appeal as moot.

and Murr as part of a scheme to profit from the settlement award. In fact, Murr had provided no appreciable legal services to Texas regarding the tobacco litigation. Soon after the scheme was discovered, Morales was indicted.

During Morales's criminal proceedings, Private Counsel moved for a protective order under Federal Rule of Criminal Procedure 16(d)(1). Listed as victims of Morales's scheme in the indictment and cooperating as witnesses, Private Counsel asked the district court to prevent Morales from disclosing information they produced in the course of the prosecution. Private Counsel sought the protective order after learning that Morales intended to sue Private Counsel to recover some or all of the fee award that Private Counsel recovered as part of the settlement agreement. The government—citing the Victim and Witness Protection Act—supported Private Counsel's motion, and confirmed that Morales was soliciting plaintiffs' lawyers' assistance in suing Private Counsel. In direct response to the concerns voiced by Private Counsel, the district court granted Private Counsel's motion and entered a protective order requiring the parties to keep "all discovery" confidential and to "not disclose same except as necessary to prepare their cases for trial."

A few months later, Morales pleaded guilty to mail fraud and to making and filing a false income tax return. The district court sentenced him to 48 months of imprisonment and three years of supervised release. Shortly before Morales was sentenced, he moved to modify the protective order so that he could enter several hundred pages of evidence (including the two documents at issue in this appeal) obtained during his prosecution into the record. The district court denied the motion. Morales neither pursued a direct appeal nor appealed the district court's denial of his motion to modify.

Fast-forward eleven years to 2014. Morales, who had completed his prison term and term of supervised release, again filed a motion to modify the protective order. This time, Morales limited his motion: He asked the district

No. 14-51314

court to lift the protective order only as to two specific documents, both of which Private Counsel produced to the government during his prosecution. Morales himself has had these documents since at least 2003, when he received them from the government during his criminal proceedings. The documents were never entered into evidence, however. Morales seeks to use the documents as the basis for a *qui tam* suit on Texas's behalf against Private Counsel because, in his view, they provide a basis for the recovery of some or all of Private Counsel's tobacco-settlement fee award. Private Counsel and the government both opposed Morales's motion.

The district court held a hearing on the motion to modify and, on November 20, 2014, denied it. Morales filed a motion for extension of time to appeal, along with a notice of appeal, on December 9, 2014. The district court denied his motion for an extension, and Morales appealed that denial as well. We consolidated his appeals.

Private Counsel and the government contend that this is a criminal appeal governed by Federal Rule of Appellate Procedure 4(b) and, as a result, that Morales did not timely file his appeal within fourteen days. Morales counters that this is a civil appeal governed by Rule 4(a) and that, even if it is not, the district court abused its discretion in denying his motion for an extension of time to file.

Aside from his arguments about whether he timely filed his appeal, Morales argues on appeal only that the district court abused its discretion in denying his motion to modify the protective order.

## II.

We review the district court's denial of a motion to modify a criminal protective order for abuse of discretion. *See United States v. Gurney*, 558 F.2d 1202, 1211 n.15 (5th Cir. 1977) (noting district court's discretion in deciding confidentiality of documents in criminal case); *cf. United States v. Miramontez*,

No. 14-51314

995 F.2d 56, 59 (5th Cir. 1993) (reviewing denial of motion for disclosure of grand jury materials for abuse of discretion).

### III.

Private Counsel and the government both contend that Morales did not timely file his notice of appeal. Whether Morales timely noticed his appeal depends on whether this appeal is criminal or civil in nature.

Federal Rule of Appellate Procedure 4(a)(1)(B) provides litigants sixty days to notice an appeal in a civil case involving the United States. Rule 4(b)(1)(A), on the other hand, provides defendants only fourteen days to notice an appeal in a criminal case. The district court entered the order denying Morales's motion on November 20, 2014. Morales filed his notice of appeal on December 9, 2014 (nineteen days later). If Morales's appeal is civil, rather than criminal, his notice of appeal was timely under Rule 4(a)(1)(B).[2]

We have never considered whether Rule 4(a) or 4(b) governs an appeal from an order denying a post-conviction motion to modify a criminal protective order. Although Morales filed his motion to modify the protective order "in the same court and under the same docket number as his earlier criminal proceeding, this does not require that his [motion] be treated as a criminal action." *Miramontez*, 995 F.2d at 58; *see United States v. Roher*, 706 F.2d 725, 727 (5th Cir. 1983). Rule 4(a) applies to civil proceedings, even those arising from earlier criminal cases; the inquiry is whether the proceedings themselves are civil. Indeed, even some appeals arising out of motions under the Federal Rules of Criminal Procedure are civil for Rule 4 purposes. *Hunt v. U.S. Dep't of Justice*, 2 F.3d 96, 97 (5th Cir. 1993) (per curiam) (Rule 4(a) applies to Rule

---

[2] The timeliness of a notice of appeal in a criminal case is not jurisdictional and can be waived, *United States v. Martinez*, 496 F.3d 387, 388-89 (5th Cir. 2007), but the government did not waive timeliness.

41(e) motions for return of property); *Roher*, 706 F.2d at 727 (Rule 4(a) applies to Rule 46(f) motions to remit or set aside forfeiture of appearance bond).

But we have never set out a clear test for determining whether proceedings other than direct appeals arising out of final judgments in criminal cases are civil or criminal in nature. Instead, we have often reasoned by analogy. *See United States v. Truesdale*, 211 F.3d 898, 903 (5th Cir. 2000). Where motions have civil analogues, that weighs in favor of the proceedings being civil. *See id.* at 904 (Rule 4(a) applies to appeals from orders on Hyde Amendment motions, regarding reimbursement of attorney's fees to defendants in certain criminal cases, because those motions are analogous to motions under Equal Access to Justice Act); *United States v. Cooper*, 876 F.2d 1192, 1194 (5th Cir. 1989) (per curiam) (Rule 4(a) applies to appeals from orders on petitions for writs of error coram nobis because those petitions are equivalent to § 2255 motions, which are governed by Rule 4(a)), *abrogated on other grounds by Smith v. Barry*, 502 U.S. 244 (1992); *see also Roher*, 706 F.2d at 727 (Rule 4(a) applies to appeals from orders denying motions to set aside or remit forfeiture of appearance bond because those motions involve "a plainly civil subject"); *Miramontez*, 995 F.2d at 58 (Rule 4(a) applies to appeal from order on motion for disclosure of grand jury transcripts where district court construed petition, in part, as FOIA request, a construction that "emphasize[d] the civil aspect" of the proceedings).

A motion that "deals directly with the movant's liberty interest," on the other hand, is likely to be criminal; such motions implicate the reasons for Rule 4(b)'s shorter time period. *Truesdale*, 211 F.3d at 903; *see, e.g.*, *United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992) (Rule 4(b) applies to Rule 35 motions to correct sentence); *cf. Roher*, 706 F.2d at 727 (Rule 4(a) applies to Rule 46(f) motions to set aside bond forfeiture because the "reasons for short time periods for criminal appeal do not apply"); *Truesdale*, 211 F.3d at 904

No. 14-51314

(Rule 4(a) applies to Hyde Amendment motions in part because they do not implicate movant's liberty interest). Perhaps the most apt distillation of a rule is found in *Hunt*, where we suggested that motions that are "not a part of the trial and punishment process that is criminal law" should be treated as civil. 2 F.3d at 97; *see also United States v. Holland*, 214 F.3d 523, 526 (4th Cir. 2000) ("A proceeding is basically civil if it redresses private injuries; a criminal proceeding, by contrast, establishes guilt and punishes offenders.").

Morales's motion to modify the protective order has a civil analogue. Protective orders are commonly entered in civil cases, and indeed the district court here analyzed Morales's motion, in part, under the civil standard for modifying a protective order. Motions to modify protective orders in criminal cases appear to be infrequent; courts have thus drawn from the standard for modification of civil protective orders in deciding them. *See, e.g., United States v. Swartz*, 945 F. Supp. 2d 216, 219 (D. Mass. 2013). That we may have to look to civil law to resolve Morales's motion weighs in favor of holding that the motion is civil. Morales, moreover, seeks to modify the protective order because he wants to file a *qui tam* action, a civil matter. *Cf. Roher*, 706 F.2d at 727. As in *Miramontez* (where the movant sought grand jury transcripts to support a habeas petition under § 2241), that Morales's ultimate goal is a civil action weighs in favor of his motion being civil. 995 F.2d at 58; *see United States v. Hamberg*, No. 07-1527, 294 F. App'x 251, at *1 (8th Cir. Sept. 30, 2008) (relying on *Miramontez* and holding that appeal from post-judgment order denying motion to set aside protective order was civil).

What is more, Morales's motion does not deal with his liberty interest. Indeed, not only has Morales's criminal conviction "long been final," *Miramontez*, 995 F.2d at 58, he completed his sentence long ago as well. It is thus difficult to characterize his motion as "part of the trial and punishment process that is criminal law," *Hunt*, 2 F.3d at 97; he seeks merely the

No. 14-51314

"disclosure of secret information, not unlike a [FOIA] request," *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1168 (10th Cir. 2006). *See also Holland*, 214 F.3d at 526. And neither Private Counsel nor the government identifies anything implicating the policy reasons why criminal appeals are subject to shorter deadlines.[3] *See United States v. Craig*, 907 F.2d 653, 656 (7th Cir. 1990) (discussing policy reasons).

For all these reasons, we hold that Morales's appeal is civil, is governed by Rule 4(a), and is thus timely.[4]

## IV.

Morales argues that the district court abused its discretion in denying his motion to modify the protective order. He seeks to share two documents with the State of Texas, in hopes that he can convince it to join his (as-yet-unfiled) *qui tam* suit against Private Counsel.

Below, the parties disputed the proper standard for assessing Morales's motion, but the district court decided that—under any standard—Morales's motion should be denied. Private Counsel and the government argue that we should assess Morales's motion under the standard for gaining access to grand jury materials. *See, e.g.*, *Miramontez*, 995 F.2d at 59-60. Morales, however, disputes that Private Counsel provided the documents at issue under a grand jury subpoena—the government, moreover, refuses to represent that they were—and the district court explicitly declined to resolve that factual question. We will not make such a finding in the first instance on appeal. *See Lytle v. Bexar Cty.*, 560 F.3d 404, 417 (5th Cir. 2009) ("[I]t is the job of the factfinder,

---

[3] The government cites the Seventh Circuit's explanation that the shorter deadline exists "to ensure that criminal prosecutions do not plod on indefinitely." *Craig*, 907 F.2d at 656). But Morales's prosecution has concluded.

[4] Because we decide that Morales's appeal is civil, and thus timely under Rule 4(a)(1)(B), we do not address his related argument that the district court abused its discretion in denying his motion for an extension of time to file his notice of appeal.

not this court, to ultimately resolve the factual disputes and make the inferences that fill the gaps in the facts."). In addition, on its face, Morales's motion sought only to modify a protective order, not to unseal grand jury materials.[5] Although the documents may be protected as grand jury materials, it is undisputed that they are covered by the protective order. We thus address whether the district court abused its discretion in finding that Morales failed to meet the standard for modifying the protective order.

Declining to decide whether the civil or criminal standard for modifying a protective order applied, the district court analyzed Morales's motion under both standards. But the protective order was entered under Federal Rule of Criminal Procedure 16(d)(1), signaling that the criminal standard applies, particularly in the absence of any contrary indication.[6] We thus analyze Morales's modification motion under the criminal standard—although, given the criminal standard's relative lack of content, the civil standard informs our analysis.

Federal Rule of Criminal Procedure 16(d)(1) provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." We have not identified what constitutes "good cause" to modify a Rule 16(d)(1) protective order, but we find it prudent to borrow from the civil context. *See Swartz*, 945 F. Supp. 2d at 219 ("[I]t is appropriate to analyze the 'good cause' requirement under the criminal rules in light of precedent analyzing protective orders entered in civil cases."). In that context, courts consider four factors when determining whether to modify

---

[5] The secrecy of grand jury materials is animated by concerns different from those justifying the confidentiality of documents covered by a protective order. *Compare Miramontez*, 995 F.2d at 59 (discussing grand jury secrecy) *with Swartz*, 945 F. Supp. 2d at 219-220 (discussing criminal protective orders).

[6] Whether this case is criminal or civil for the purposes of Federal Rule of Appellate Procedure 4 does not change the nature of the protective order itself.

a protective order: "[(]1) the nature of the protective order[;] (2) the foreseeability, at the time of issuance of the order, of the modification requested[;] (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Peoples v. Aldine Indep. Sch. Dist.*, No. CIV. A. 06-2818, 2008 WL 2571900, at *2 (S.D. Tex. June 19, 2008). Good cause is the most important of these factors in the criminal context, given that phrase's inclusion in Rule 16(d)(1).

Regarding the first factor, the protective order here covered "all discovery," indicating that it should be more easily modified than more narrowly tailored protective orders. *Peoples*, 2008 WL 2571900 at *2. Yet the two documents that Morales seeks to unshield are precisely the type of documents at which the protective order was aimed—it is not as if Morales seeks simply to narrow an overly broad protective order to disclose documents not properly covered. In seeking the protective order, Private Counsel sought to prevent Morales from using documents that they disclosed to sue them, and that is exactly the reason Morales seeks to disclose the documents here. At best, then, this factor is neutral.

Although the second factor, foreseeability, is a more apt consideration when the parties have negotiated a protective order, *see id.*, it nevertheless has some minimal relevance here. Morales knew shortly after the order was entered that he wanted it to be modified and he effectively moved to modify it—for the same reason he now seeks to modify it. But he did not appeal the district court's refusal to unseal documents at that time. This factor thus weighs slightly against modification.

Reliance here weighs against modification. Private Counsel relied on the protective order when providing the government with these two documents, whether or not Private Counsel provided them under a subpoena. Had the protective order not been entered, Private Counsel might have resisted a

subpoena or might not have provided the documents voluntarily, whatever the case may have been. As cooperating witnesses, Private Counsel are entitled to not have their settled expectations—that, because of the protective order, the evidence Private Counsel provided against Morales would not be used against them—overturned. *Id.*; *cf. Swartz*, 945 F. Supp. 2d at 221 (discussing interest, supporting redaction, in shielding victims from potential retaliation).

Lastly, Morales has not shown good cause to modify the protective order. Good cause in this context includes "changed circumstances or new situations" and "the need to make information available for use in subsequent proceedings"; it also factors in "the other party's need for protection." *Peoples*, 2008 WL 2571900 at *3 (internal quotation marks and citations omitted).

Morales has not shown changed circumstances.[7] The district court's rationale for entering the protective order in 2003 remains unchanged today. The protective order was entered precisely to prevent Morales from doing what he now seeks to do: use documents that Private Counsel produced during discovery to sue Private Counsel. Indeed, Morales moved in 2003 to unseal these documents in order to further that same objective; the district court denied that motion. Morales did not appeal that denial. Nor did Morales recently discover these two documents. To the contrary: The government provided Morales with the documents during discovery back in 2003. In short, nothing about Private Counsel's "need for protection" from disclosure has changed.

Morales does seek the documents for use in subsequent proceedings. But that does not weigh in favor of modification here, because preventing the

---

[7] Morales does not seriously argue that changed circumstances justify modification. Effectively, he argues that his desire to file the *qui tam* suit constitutes changed circumstances, although the record demonstrates that he has been interested in suing Private Counsel on a similar theory since at least 2003.

documents' use in subsequent civil proceedings is the very reason why the documents are under a protective order. That Morales has perhaps formulated a more comprehensive theory of his proposed lawsuit than he did in 2003 does not warrant abandoning the original justification for the protective order. And in the context of criminal protective orders, the "subsequent proceedings" inquiry usually regards a defendant's intent to use information to defend himself against criminal prosecution, not his intent to file a lawsuit against his victims and witnesses that provided evidence against him.[8]

Because Morales has not demonstrated good cause to modify the protective order, the district court did not abuse its discretion in denying his motion.

V.

The district court did not abuse its discretion in refusing to modify the protective order. We thus AFFIRM. Because we hold that Morales's appeal was timely, we DISMISS AS MOOT his appeal of the district court's denial of his motion for an extension of time to appeal.

---

[8] As part of its "good cause" analysis, the district court considered the merits of Morales's putative *qui tam* suit. But we need not—and do not—assess the merits of that hypothetical suit to determine whether the district court abused its discretion in denying modification. It is enough to note that nothing relevant to the protective order has changed since 2003, when the district court entered the order, and when Morales moved to modify it for the first time. No facts relevant to the potential suit have changed, and Morales identifies nothing about the putative suit that differs from the suit he would have filed in 2003, save perhaps a more fleshed-out theory of the case and a purported desire to further Texas's interests rather than purely his own. As the district court found, he had, and had identified the potential importance of, the relevant documents back in 2003. Thus, because Morales cannot identify any changed circumstances or reasons to undermine the district court's protections for Morales's victims and witnesses, he cannot show good cause—whether or not his hypothetical suit is potentially meritorious.