UNITED STATES of America, Appellee,

v.

Angelo **PACCIONE; August Recycling, Inc.; A & A Land Development; National Carting, Inc.; Stage Carting, Inc.; Anthony Vulpis; and Rosedale Carting, Inc., Defendants–Appellants.**

Nos. 2149, 2150 and 2151, Dockets 91–1325L, 91–1326 and 91–1327.

United States Court of Appeals, Second Circuit.

Argued Aug. 12, 1991.

Decided Nov. 4, 1991.

Nathan Z. Dershowitz, New York City (Victoria B. Eiger, Dershowitz & Eiger, P.C., New York City, Alan M. Dershowitz, Cambridge, Mass., of counsel), for appellants Angelo Paccione, August Recycling, Inc., A & A Land Development, Nat. Carting, Inc. and Stage Carting, Inc.

Michael S. Ross, New York City (LaRossa Mitchell & Ross, New York City, of counsel), for appellant Rosedale Carting, Inc.

Barbara L. Hartung, New York City, for appellant Anthony Vulpis.

Jeffrey B. Sklaroff, New York City (Roger S. Hayes, Acting U.S. Atty., S.D.N.Y., Daniel C. Richman, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before MINER, WALKER and McLAUGHLIN, Circuit Judges.

MINER, Circuit Judge:

Defendants-appellants Angelo Paccione, August Recycling, Inc., A & A Land Development, National Carting, Inc., Stage Carting, Inc., Anthony Vulpis and Rosedale Carting, Inc. appeal from a "Second Order of Forfeiture" entered on May 10, 1991 in the United States District Court for the Southern District of New York (Motley, *J.*), vesting title in the United States (the "government") to certain properties ("Subject Property") by virtue of appellants' failure to pay $22 million in accordance with a letter agreement entered into between the parties in lieu of a formal forfeiture hearing. The Subject Property specified in the Second Order of Forfeiture consisted primarily of the ownership interests of the defendants Paccione and Vulpis in the defendant corporations and the ownership interests of the defendant corporations in various subsidiaries, as well as the assets of the corporations themselves.

On this appeal, appellants contend that the district court erred when it authorized the government to take title to the Subject Property by issuing its Second Order of Forfeiture. Appellants maintain that by signing the letter agreement rather than submitting the forfeiture issue to the jury, the government could not take title to the properties upon appellants' default but, rather, should have executed on the judgment as a judgment creditor pursuant to N.Y.Civ.Prac.L. & R. § 5236 (McKinney 1978). The government contends, and the district court found, that by signing the letter agreement, the government did not waive its forfeiture rights under the statute, including the right to a substitution of assets under 18 U.S.C. § 1963(m). We disagree with the government's contention and therefore reverse.

## BACKGROUND

On March 8, 1990, an eighteen count superseding indictment was handed down against Angelo Paccione, Anthony Vulpis, Fred E. Weiss, John B. McDonald, A & A Land Development ("A & A Land"), August Recycling, Inc. ("August Recycling"), National Carting, Inc. ("National"), Stage Carting, Inc. ("Stage"), Rosedale Carting, Inc. ("Rosedale"), Vulpis Brothers, Ltd. ("Vulpis Bros.") and New York Environmental Contractors. Count One of the indictment charged all defendants with conducting and participating in the affairs of an enterprise, which was comprised of all defendants, through a pattern of racketeering, in violation of section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). The indictment charged eighteen racketeering acts, including mail fraud on New York city and state government agencies, mail and wire fraud on CSX Transportation, Inc. ("CSX"), illegal disposal of medical wastes, fraudulent statements to city officials to secure disposal permits, and mail fraud on various medical care facilities. Count Two of the indictment charged all defendants with conspiracy to conduct and participate in the affairs of an enterprise through a pattern of racketeering, in violation of section 1962(d) of RICO, 18 U.S.C. § 1962(d). Paragraphs 61–62 of the indictment sought forfeiture pursuant to 18 U.S.C. § 1963(a)(1), (2) & (3) of the defendants' stock and other ownership interests in August Recycling, National, Stage, A & A Land, Rosedale and Vulpis Bros. Counts Three through Twelve of the indictment related to other instances of mail fraud, in violation of 18 U.S.C. § 1341.

At trial, the government presented evidence demonstrating that the defendants defrauded various persons and governmental agencies through the operation of an illegal landfill on 70 acres of land on Staten Island, New York, and through the operation of a company that falsely held itself out as a specialist in the strictly regulated field of collection, transportation and disposal of infectious medical wastes. For a more detailed description of the offenses, which one court has called "one of the largest and most serious frauds involving environmental crimes ever prosecuted in the United States," see *United States v. Paccione,* 751 F.Supp. 368, 371 (S.D.N.Y.1990).

On June 6, 1990, while the jury was deliberating, the parties presented the district court with a letter agreement to settle the forfeiture issue in lieu of a formal RICO forfeiture hearing and jury determination on that issue. In the agreement, both the government and the defendants agreed that the defendants would forfeit $22 million in cash and that all defendants would be held jointly and severally liable for the full forfeiture amount in the event of a guilty verdict. It provided in relevant part that appellants

> hereby forfeit to the Government the sum of $22 million in full satisfaction of the forfeiture penalties set forth in [18 U.S.C. § 1963], ... as well as whatever fines and restitution might otherwise be imposed pursuant to [the statute].

Thereafter, on June 8, 1990 the jury returned a verdict of guilty, convicting Paccione, Vulpis, A & A Land, August Recycling, National, Stage, Rosedale and Vulpis Bros. of both the substantive offense of RICO and RICO conspiracy, and mail fraud charges in Counts Five through Nine.[1] Although McDonald and New York Environmental Contractors were convicted of the mail fraud charges in Count Twelve, they were acquitted of the substantive RICO and RICO conspiracy charges. Their names therefore were deleted from the agreement. Paccione also was convicted of mail fraud charges in Count Twelve. After the verdict was received, the letter agreement was "so ordered" by the court and entered as a judgment.

The agreement included a payment schedule requiring payment of $4 million on July 8, 1990, $8 million on August 8, 1990 and $10 million on September 8, 1990. To secure the agreed upon payments, the defendants were required to deliver affidavits confessing judgment in the amount of $22 million, which, in the event of default, the government could enter as judgments against the defendants. Also, the agreement authorized the appointment of a trustee to oversee the operation of the corporations until the $22 million was paid.

The defendants failed to make the first payment on July 8, 1990 and, to date, have not satisfied any of their payment obligations under the agreement. Based on the agreement and the affidavits of confessions of judgment, filed immediately after the defendants' default, the government moved for the entry of a Judgment and Order of Forfeiture for the $22 million. On July 10, 1990, Judge Kimba M. Wood signed a judgment that included a direction to the Clerk of the Court to enter "this Judgment and Order of Forfeiture forthwith." Additionally, the court granted the government's motion pursuant to 18 U.S.C. § 1963(k) to take depositions of various persons to identify and locate the defendants' assets. Meanwhile, the trustee was engaging in extensive efforts to sell the defendant corporations and had received eight formal bids, three of which he was pursuing further.

In order to conclude a sale of the corporations, the government moved on May 9, 1991 before Judge Constance Baker Motley for an order substituting the Subject Property for the $22 million cash payments due and vesting title to the Subject Property in the government. The government claimed that, despite its efforts, it could not locate $22 million in cash and that, as a result of the defendants' failure to sell their interests in the corporations, defendants had in effect commingled the monies due with other interests and property belonging to them. See 18 U.S.C. § 1963(m)(5).

At the hearing on the motion on May 9, the defendants contended that the government had waived its right to a substitution of assets under section 1963(m) by entering into the agreement instead of submitting the issue of forfeiture to the jury and thus was required to execute on the judgment as a judgment creditor in order to secure the amount due. The defendants also objected to the language in the proposed Second Order of Forfeiture that allowed the government to sell the Subject Property "at whatever price and under whatever terms [the government] deems appropriate to satisfy the $22 million judgment and

---

1. Fred E. Weiss was murdered before the trial began.

order of forfeiture." Disagreeing with appellants, the district court found that the agreement was "clearly a forfeiture" and that the government had not waived its rights and remedies under the statute by signing it. The court held that the only right waived by the government was the right to a jury determination as to the amount of the forfeiture. Consequently, the government could avail itself of the procedures set forth in section 1963(m) to satisfy the obligations of appellants. The Second Order of Forfeiture was entered as a judgment on May 10, 1991. All defendants except Vulpis Bros. filed notices of appeal from the Second Order of Forfeiture.

## DISCUSSION

Appellants primarily contend that the district court erred in authorizing the government to invoke section 1963(m) and substitute assets for the $22 million cash forfeiture upon their default. The district court found, and the Second Order of Forfeiture provides, that the agreement "expressly contemplates the sale of the defendant companies to satisfy the $22 million forfeiture." Appellants assert that although the agreement contemplated the sale of the properties in the event of default, it did not contemplate the *forfeiture* of the properties in the event of default.

█ The government contends that it did not waive its rights and remedies under the forfeiture statute by entering into the agreement. It argues that "rather than constituting a waiver of the Government's forfeiture rights under [section] 1963, the [agreement] expressly provides for the very forfeitures envisioned by the statute." The government points to the fact that it has exercised virtually all of its rights under the forfeiture statute from the time of the execution of the agreement. First, the agreement maintained in effect a post-indictment restraining order enjoining the dissipation of assets, pursuant to section 1963(d)(1)(A). Next, the agreement provided for the appointment of a RICO trustee to oversee the operation of the companies until payment was made in full, *see* 18 U.S.C. § 1963(e). In an order dated June 19, 1990, the district judge appointed Barrington D. Parker to serve as trustee. On November 10, 1990, the district court entered another order authorizing the trustee to oversee "the disposition of the assets and/or stock of the defendants and defendant corporations." Then, upon the default of appellants, the government applied pursuant to section 1963(k), for authority to conduct discovery in order to locate $22 million in cash. Thus, by requiring the defendants to deliver to the government affidavits of confessions of judgment, the government maintains that it did not relinquish its other rights under the statute but rather acquired additional rights so as to secure the defendants' obligations. With this latter contention we disagree.

18 U.S.C. § 1963(m) provides in pertinent part that

> [i]f any of the property described in subsection (a) [which defines forfeitable property], as a result of any act or omission of the defendant—
>
> > (1) cannot be located upon the exercise of due diligence;
> >
> > ...; or
> >
> > (5) has been commingled with other property which cannot be divided without difficulty;
>
> the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

18 U.S.C. § 1963(m). Ordinarily, this provision entitles the government to apply for an order forfeiting other property up to the value of the property forfeited in the original order. Section 1963(m) provides a means of assuring that the defendant parts with the fruits of his racketeering labors. Here, however, the agreement in question provides its own mechanism for separating the defendants from the $22 million cash payments due. Under the agreement, the government had the right to obtain a $22 million money judgment by filing the affidavits of confessions of judgment and then to enforce the money judgment thereby obtained in accordance with Rule 69(a) of

the Federal Rules of Civil Procedure and applicable state procedures.

The agreement, like any other contractual arrangement, allocated various rights and obligations between the parties. In this case, both the government and the defendants gave up something and got something in return. The defendants surrendered the right to have a jury determine the forfeiture amount and the extent of forfeitable property interests. The defendants also waived their right to any notice of the filing of the confessions of judgment and the entry of a judgment against them. Likewise, they relinquished the right "to interpose any pleadings, motions, objections or other response in connection with the entry by the Government of the confessions of judgment. . . ." The surrender by the defendants of these various rights inured to the benefit of the government.

In fact, the government exercised its rights under the agreement. After the defendants failed to make the first payment on July 8, 1990, the government, without notifying the defendants, filed the confessions of judgment and on July 11, 1990 obtained, pursuant to Judge Wood's order, a $22 million money judgment against the defendants. The government also continued to retain, subsequent to the July 11 order, a trustee to oversee the operation of the defendant companies. However, the government never executed on its money judgment. Instead, after making efforts to locate $22 million in the possession of the defendants, the government applied for the Second Order of Forfeiture.

■ The government contends that one of its primary objectives has been to require the defendants to forfeit all of their property interests in, or those acquired through, their unlawful activities. They assert that 18 U.S.C. § 1963(a) mandates the forfeiture of these interests upon conviction under 18 U.S.C. § 1962. *See* 18 U.S.C. § 1963(a) ("Whoever violates any provision of section 1962 of this chapter . . . shall forfeit to the United States" any interest in the enterprise); *see also United States v. Porcelli*, 865 F.2d 1352, 1364–65 (2d Cir.1989); *United States v. Hess*, 691

F.2d 188, 190 (4th Cir.1982). The government, however, must have believed that $22 million represented the full amount of the defendants' interests in and acquired through the racketeering enterprise or else it would not have agreed to that sum and withdrawn the issue from the jury's consideration. *Cf. Hess*, 691 F.2d at 190 (jury not permitted to find that less than all the defendant's interest in an enterprise is subject to forfeiture whenever section 1962 violated). An execution on the judgment therefore is all that is necessary to enforce payment of the amount that both sides agreed should be paid.

While the agreement contemplated the sale of the properties to raise the $22 million in the event of the failure of the defendants to make the payments as agreed, it did not contemplate the automatic vesting of title to the Subject Property in the government so as to enable the government to sell the properties at whatever price and under whatever terms it deems appropriate. The fact that the parties may have contemplated a sale of the companies does not lead ineluctably to the conclusion that the parties contemplated a sale by the government at any price. If such were the case, we fail to see why the defendants would have entered into the agreement rather than require the government to submit the forfeiture issue to the jury.

■ Fed.R.Civ.P. 69(a) directs that the laws of New York be applied in enforcing a judgment obtained in a federal court located in New York. New York law authorizes the sale of real property to satisfy a money judgment. *See* N.Y.Civ.Prac.L. & R. § 5236 (McKinney 1978). That provision requires that property, which is subject to the lien of the judgment at the time of delivery of execution to the sheriff, be sold "at public auction at such time and place within the county where the real property is situated and as a unit or in such parcels, or combination thereof, as in [the sheriff's] judgment will bring the highest price." Thus, New York law requires that the sale of real property to satisfy a money judgment must be conducted in a commercially reasonable manner. Clearly, there is a sig-

nificant difference between the sale of property to the highest bidder and the sale of property at whatever price and under whatever terms the government deems appropriate. Only under the former method of sale are the defendants provided with some assurance that if the properties are worth more than $22 million, they will receive the surplus after payment is made to the government. That is the benefit of the bargain they made when they signed the agreement.

The government maintains that the bidding procedures established by the RICO trustee duplicated the procedures mandated by New York law. The trustee, it contends, is pursuing the highest, commercially reasonable price for the properties. Moreover, after sale, the government will distribute to appellants any proceeds in excess of the $22 million, plus interest, costs, fees, and other expenses incurred to date. However that may be, the Second Order of Forfeiture does not require the government to secure the highest price for the properties but instead gives the government discretion as to price and purchaser. At the hearing before Judge Motley, appellants requested that the government be required to sell the property in a commercially reasonable manner. The government objected, claiming that it was not required to conduct its sale in such a manner, and only consented to replacing the terms "[sale] at whatever price and under whatever terms" with the language "[sale] by any commercially feasible means." The terms, "commercially feasible," are found in 18 U.S.C. § 1963(f), the forfeiture statute. In its brief, the government maintains that its offer to amend the Second Order of Forfeiture in that manner still stands. After vigorously maintaining that it was not required under RICO to sell the property in a commercially reasonable manner, the government now appears in its brief to suggest that by (i) adopting the "commercially feasible" language of RICO itself and (ii) following on its own initiative some of the requirements of the New York CPLR, it is imposing upon itself the requirement that its actions be guided by commercial reasonableness. What is re-

quired by the agreement, however, is an execution sale in accordance with the laws governing such sales.

▌ The government has advanced no plausible arguments and consequently has not persuaded us that the agreement should be treated differently from any other agreement entered into by the government. Indeed, we fail to see any analytical difference between this agreement and a plea agreement. In a plea agreement, the defendant waives his right to put the government to its proof before a jury and the government typically waives its right to convict of a more serious offense. Here, the parties in similar fashion bargained for certain benefits and corresponding burdens. We already have held that both parties to a plea agreement made in lieu of statutory forfeiture proceedings are bound by their bargain, *see United States v. Alexander*, 869 F.2d 91, 94–95, 96 (2d Cir.1989), as has at least one other circuit court, *see In re Arnett*, 804 F.2d 1200, 1204 (11th Cir.1986), and we see no reason to conclude otherwise with respect to an agreement in lieu of a formal forfeiture hearing. Like any other party to a contract, the government may not perform in a manner inconsistent with the terms of the agreement. All of the actions taken by the government up to this point were either expressly permitted by the agreement or not inconsistent with any express or implied terms. For instance, the agreement explicitly recognized that the post-indictment restraining order would remain in effect. Also, the express terms of the agreement authorize the appointment of a trustee to oversee the operation of the defendant companies. Finally, although the agreement is silent with respect to the authority of the government to conduct discovery to locate the $22 million, neither is such discovery expressly or impliedly prohibited. Unlike the above actions, a substitution of assets is wholly inconsistent with the terms of the agreement. Contrary to the government's contention, this is not a case where an agreement simply fails to incorporate expressly a substitution of assets provision; rather, the terms of the agreement here plainly are

inconsistent with any substitution. We therefore conclude that it was error to issue the Second Order of Forfeiture authorizing the government to invoke the substitution provisions of section 1963(m). Indeed, it was error to issue a Second Order of Forfeiture because there was no First Order of Forfeiture.

## CONCLUSION

We reverse and remand for further proceedings consistent herewith.