NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0269n.06

No. 21-1098

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 08, 2022
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

v.

ANDRE BARRY-DAVID POWELL,

    *Defendant-Appellant.*

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: SILER, CLAY, and MURPHY, Circuit Judges.

SILER, Circuit Judge. Andre Barry-David Powell ("Powell") appeals the district court's denial of his motion to suppress evidence on the basis that it was the product of an unconstitutional search executed under a search warrant lacking probable cause. We **AFFIRM**.

**I.**

*Factual Background.* On December 23, 2019, two men stole two shotguns from a Walmart store in Kalamazoo, Michigan. Surveillance footage of the store showed two men arrive in a dark colored Jeep and enter the store one after the other. A witness testified that the driver of the Jeep distracted store staff while the Jeep's passenger opened a gun case, removed two shotguns, and then walked out of the store with the firearms hidden under his clothing. Walmart security personnel recognized the man who stole the shotguns and provided his identity to police investigators. Because this individual would later become an unnamed confidential source ("CS") in the investigation giving rise to this case, he is simply called the "gun thief."

On December 27, 2019, detective Bryan Jolliffe ("Jolliffe") of the Kalamazoo County Sheriff's Department ("KCSD") and agent Jeremy Marshall ("Marshall") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") visited the identified gun thief in the Kalamazoo County jail where he was being held on unrelated offenses. The gun thief was not helpful when interviewed by Jolliffe and Marshall. He first lied by saying he stole two BB-guns, not shotguns, from Walmart, then he said his wife picked him up from Walmart and told him to get rid of the stolen guns, but he would not provide his wife's name to investigators. He also told police that he took the shotguns from an unlocked case, but security camera footage suggested otherwise. Knowing these statements were untrue, the investigators showed the gun thief surveillance footage of his stealing the two shotguns. He became angry and the interview ended.

The following day, Marshall returned to the jail along with Detective Karen Rivard ("Rivard") of KCSD to attempt another interview with the gun thief. This time the gun thief admitted stealing two shotguns, and abusing methamphetamines. He continued with some of the inconsistencies he made the prior day, such as saying he walked to the Walmart store and that the case holding the stolen shotguns was unlocked. But the gun thief also admitted to selling one of the shotguns to a man named "Dre" or "Black" on December 24, 2019. At this point the gun thief became a CS for an investigation into "Dre's" purchase of the stolen shotgun.

On the day the CS sold the stolen shotgun to "Dre," the CS went to a home on Wheaton Avenue in Kalamazoo and, using a phone number he had for "Dre," called him. The CS provided this phone number to investigators. The CS said that after he placed the call, "Dre" came out of the home on Wheaton Avenue and discussed buying the stolen shotgun from the CS for $50. The two went into the Wheaton Avenue residence to conduct the illegal sale. At this time the CS told

investigators how "Dre" showed him three to four shotguns, an AR-style rifle, and a loaded pistol. "Dre" then paid the CS $50 for the stolen shotgun, and the CS left.

The CS said that "Dre" has a Facebook profile under the alias "Illa Matic." Investigators looked up the Facebook profile under the name "Illa Matic" and showed the profile picture to the CS. The CS confirmed that the picture was of "Dre." The CS also confirmed the location of the Wheaton Avenue house on a map and said that "Dre" drove a brown Cadillac sedan and sells marijuana. At this point, Rivard initiated an investigation into "Dre" and an effort to corroborate the information given by the CS.

On the heels of the CS interviews, Rivard took a series of steps to test the veracity of the information provided. First, Rivard crosschecked the phone number the CS gave for "Dre" against KCSD records and found it linked to an individual named Andre Barry-David Powell, the Defendant. Next, Rivard investigated the residence on Wheaton Avenue where the illegal gun sale allegedly occurred. Although records showed the house was owned by Kalamazoo Valley Rentals, it was determined through the Michigan Secretary of State database that Powell listed his address as 726 Wheaton Avenue, Kalamazoo, Michigan, the same address where the alleged illegal gun sale occurred. Third, Rivard obtained a photo of Powell from the state database and found it matched the Facebook profile picture for "Illa Matic." Fourth, Rivard checked law enforcement records associated with 726 Wheaton Avenue and determined that police contacted Powell at that address on December 22, 2019, (two days before the alleged illegal gun sale) concerning a curfew violation involving one of his children. That report listed Powell's phone number, which again matched the number provided by the CS. Based on this information, law enforcement began surveillance of 726 Wheaton Avenue and on two separate occasions observed the brown Cadillac sedan described by the CS. Lastly, law enforcement pulled Powell's criminal history, which

included multiple felony convictions including offenses related to the illegal possession of a firearm.

On January 7, 2020, Rivard swore out a search warrant affidavit stating probable cause existed that illegal firearms, ammunition, and illegal narcotics and paraphernalia would be found at Powell's residence at 726 Wheaton Avenue. Rivard included in the affidavit information from the CS interviews and corroborated information stemming from the investigation into Powell. However, the affidavit did not include all the information garnered in the CS interviews; it lacked the inconsistencies and outright lies given by the CS. That same day a state magistrate judge authorized the warrant. Kalamazoo law enforcement and ATF executed the search warrant on January 8, 2020, at 726 Wheaton Avenue.

A search of Powell's home resulted in seizure of eight firearms, including the stolen shotgun, an assortment of ammunition, various weapons, and multiple containers of marijuana. In a post-*Miranda* interview at his residence, Powell admitted to stockpiling firearms and recently purchasing a shotgun from an individual off the street.

*Procedural Background.* Early in the proceedings against him, Powell filed a motion to suppress evidence of the search of his residence by asserting that the search warrant affidavit did not establish probable cause. He also requested a *Franks* hearing, pursuant to *Franks v. Delaware*, 439 U.S. 154, 155-56 (1978), arguing that Detective Rivard deliberately and/or recklessly omitted statements from the CS upon which the affidavit was based. The specific omissions at issue were: (1) the CS was an admitted methamphetamine addict; (2) the CS provided inconsistent statements about the firearm theft; (3) the CS denied having an accomplice; and (4) the interviews of the CS occurred in jail. Powell contended that those details were material to the magistrate judge's determination that the search warrant established probable cause.

The district court granted Powell's motion for a *Franks* hearing. It heard testimony from the search warrant affiant, Detective Rivard. Rivard explained what she included in the search warrant affidavit and acknowledged leaving out information concerning the credibility of the CS. Rivard explained that she obtained information about Powell from other sources that corroborated the CS's information, notwithstanding the inconsistencies and untruths. The district court concluded that the affidavit established probable cause even when including the omitted information and because of "the careful corroboration of so many different points of identification, and the admission of the second crime, that is the sale of the gun."

The district court framed its analysis around the question of whether the corroboration of CS's information outweighed the credibility concerns created by CS's dishonesty. Looking at the totality of the circumstances, the district court found that corroboration established probable cause despite the affidavit's omissions; Powell's motion to suppress was denied. Subsequently, Powell pleaded guilty to counts one and four of the four-count indictment while reserving his right to appeal the adverse decision on his motion to suppress.

## II.

We review denial of a motion to suppress de novo for the district court's legal conclusions and defer to the district court's factual findings unless they are clearly erroneous. *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). Further, review of a denial of a motion to suppress requires this court to "consider the evidence in the light most favorable to the government." *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc).

## III.

The Fourth Amendment requires that a search warrant be supported by probable cause and describe with specificity the place to be searched and the items likely to be seized during that

search. *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008). Probable cause is established when there is a showing that there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As stated above, courts determine whether a search warrant establishes probable cause by looking at the totality of the circumstances. *United States v. Allen*, 211 F.3d 907, 972 (6th Cir. 2000) (en banc).

In some cases, search warrants include information collected from a confidential source, as occurred here. If the constitutionality of a search warrant rests, even in part, on information provided by a person unknown to the court, then the reliability of that information must be clearly demonstrated or be sufficiently corroborated through independent means. *United States v. Woosley*, 361 F.3d 924, 926-27 (6th Cir. 2004).

Powell argues that the search warrant affidavit fails to meet this requirement because Detective Rivard intentionally withheld information from the court that showed the confidential source lied, used methamphetamines, and had an incentive to implicate other parties in his own criminal activity. Powell's argument follows that because the CS was not reliable, the search warrant lacked probable cause and therefore the search of Powell's home constituted an illegal search and seizure. *See Utah v. Strieff*, 579 U.S. 232, 237-39 (2016).

First, the CS in this case was known to law enforcement and already in police custody. This is distinct from an anonymous source because a known source is subject to potential prosecution. This lends the statements of a known confidential source far greater weight. *See United States v. May*, 399 F.3d 817, 824-25 (6th Cir. 2005). Moreover, it has long been recognized that confidential informants known to law enforcement are acceptable sources in establishing probable cause. *United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006). The CS in this case was interviewed twice by police so they knew him, he was already in jail for unrelated offenses,

and he was clearly implicated in a crime due to surveillance footage showing his theft of two shotguns. Had the CS made a materially false report to law enforcement, then he could have been charged and likely prosecuted successfully. This lends favorable weight to the CS's statements concerning the illegal sale of the stolen shotgun to Powell.

Second, the CS provided significant detail about Powell, his residence, and the firearms therein. This lends weight to the credibility of the CS. "[T]he degree of detail contained in a tip may be used to infer whether the informant had a reliable basis for making his statements." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999). The CS here knew the location of Powell's residence, had his phone number, identified his likeness on a Facebook profile, correctly identified Powell's car, and observed three or four shotguns, an AR-style rifle, and a loaded pistol in his bedroom.

Third, the CS had personal knowledge of criminal activity involving Powell and occurring within Powell's residence. "[A]n in-person informant's proximity in time and space to the reported criminal activity indicates the reliability of the tip, because it reflects that the informant acquired the information firsthand." *Henness v. Bagley*, 644 F.3d 308, 318 (6th Cir. 2011); *see also Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). Here, the CS went into Powell's home and conducted an illegal firearms sale with Powell. The CS also personally observed numerous other firearms within Powell's home. Firsthand knowledge of the commission of a crime and the presence of contraband, enhances the credibility of the CS's statements.

Fourth, in addition to the information gleaned from the CS interviews, law enforcement expanded their investigation into Powell to corroborate information provided by the CS. Moreover, law enforcement launched a twelve-day investigation into Powell and the residence at 726 Wheaton Avenue. Investigators determined that the phone number and address provided by

the CS belonged to Powell, that the Facebook profile picture identified by the CS matched Powell's photo, and that the vehicle the CS said Powell drove matched the vehicle observed at Powell's residence. The CS gave no information that contradicted any of the corroborative efforts of law enforcement.

Fifth, the CS admitted to law enforcement that he engaged in criminal activity by selling the stolen shotgun to Powell. It is established that confidential sources that volunteer information against their own interests, such as here, are presumptively reliable. *See United States v. Harris*, 403 U.S. 573, 583 (1971) (plurality opinion); *United States v. Kinison*, 710 F.3d 678, 683 (6th Cir. 2013).

Sixth, law enforcement checked Powell's criminal history, which showed a proclivity for firearms and a history of marijuana-related crimes. Reviewing an individual's criminal record can help corroborate information from a confidential source. *See United States v. Houghton*, 861 F. App'x 83, 90 n.4 (6th Cir. 2021). The CS told law enforcement that he observed numerous firearms in Powell's residence, which was consistent with Powell's history of firearms violations.

No single aspect of the investigation of Powell necessarily establishes probable cause on its own. Rather, we look at all the factors in composite and from that view make a probable cause determination. Here, an extensive investigation into Powell complements statements provided by a CS such that probable cause exists. The fact that information was excluded from the search warrant affidavit does weaken it, but not fatally. It is not a requirement that an affiant include all information in the affiant's possession. *See United States v. Hampton,* 760 F. App'x 399, 404 (6th Cir. 2019) (citing *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992)). Viewed as a whole, even with the omitted information, the search warrant sets forth sufficient probable cause.

Powell argues that his post-*Miranda* statements to law enforcement should be suppressed as "fruit of the poisonous tree." This argument fails with a finding that the search warrant established probable cause.

Lastly, even if the affidavit is not supported by probable cause, the good faith reliance exception bars suppression. The Supreme Court in *United States v. Leon* held that the exclusionary rule does not bar evidence seized by officers that rely in good faith on a search warrant later held to be defective. 486 U.S. 897, 913 (1984). Powell argues that *Leon* is inapplicable because the source information for the search warrant is unreliable and lacking thorough investigation. "Under such circumstances, officers could not in good faith rely on the warrant." This is not a proper interpretation of *Leon*. "Our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Higgins*, 557 F.3d 381, 391 (6th Cir. 2009) (quoting *Leon*, 468 U.S. at 922 n.23).

Despite omissions of fact, the search warrant executed at Powell's residence, when viewed in the totality of the circumstances, established probable cause. **AFFIRMED**.